# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI EASTERN DIVISION

**TODD GILBERT and**
**BAMBI GILBERT,**                          **JURY TRIAL DEMANDED**

    **Plaintiffs,**

v.                                                     **Civil Action No.: 25-C-\_\_\_\_**
                                                     **Judge:**

**U.S. SILICA COMPANY, LLC**

    **Defendant.**

## COMPLAINT

Comes now the Plaintiffs, Todd Gilbert and Bambi Gilbert, husband and wife, and for their Complaint against the Defendant, alleges as follows:

### PARTIES, JURISDICTION and VENUE

1. At all times relevant, Plaintiffs, husband and wife Todd Gilbert ("Mr. Gilbert") and Bambi Gilbert ("Mrs. Gilbert"), were and are citizens and residents of White Hall, Greene County, Illinois.

2. Defendant U.S. Silica Company ("U.S. Silica" or "Defendant") is a Delaware limited liability company with its principal place of business located in Katy, Texas. Defendant is, and at all times relevant herein was, engaged in the business of mining and selling quartz, sandstone, and other metal/non-metal minerals through the operation of its Pacific Plant open pit mine ("Pacific Plant Mine" or "the mine") located at 819 East Osage, Pacific, Missouri 63069, operating under the United States Department of Labor Mine Safety and Health Administration ("MSHA") ID No. 23-00544. As such, Defendant is, and at all times relevant herein was, subject to MSHA's jurisdiction, as well as the jurisdiction of the Missouri Mining Commission and the Department of Natural Resources' Land Reclamation Program, and was responsible for

compliance with all applicable MSHA and Missouri rules and regulations in the operation of its Pacific Plant Mine.

3. Jurisdiction and venue are hereby proper in this Court pursuant to 28 U.S.C. § 1332 because both parties are diverse and the amount in controversy far exceeds $75,000. The Plaintiffs are residents and citizens of White Hall, Illinois, and Defendant is a citizen of Delaware (state of incorporation) and Texas (state of principal place of business). Venue is proper before this Honorable Court as facts and circumstances giving rise to the matter occurred in Pacific, Franklin County, Missouri.

**FACTS**

4. At all times relevant hereto, Defendant was the operator of the Pacific Plant Mine. Defendant actively mined minerals from an open pit mine and used the underground portions of the Pacific Plant Mine for travel between the open pit and the processing plant, for storage of equipment, mined materials, running of utility and pipelines, equipment parking, and hot weather equipment maintenance due to the cool temperatures in the underground tunnels.

5. In approximately August of 2022, Defendant hired a third-party engineering company, Goldner, to evaluate the underground portions of the mine to prepare a site-specific Health and Safety Plan, evaluate the roof and rib conditions within the underground portions of the mine, and provide safety recommendations based on the engineering company's evaluation of the site as to what supplement roof supports needed to be installed.

6. The third-party engineering company issued a report of its findings on October 19, 2022. This report detailed the numerous hazardous conditions that were found within the travel ways used in the underground portions of the mine.

7.	The engineering report repeatedly warned of dangerous "domes" throughout essentially the entire underground tunnel system. These "domes" were layers of the roof that had fallen, exposing thin overlying lawyers of limestone and shale that made the roofs unstable. The engineering report specifically advised Defendant that these "dome" areas were more susceptible to failing.

8.	This same third-party engineering firm had also performed a similar evaluation in 2017 and 2018. The engineering company found that Defendant had allowed roof supports in multiple travel ways to fail and not replaced them over the years. These failures included, but were not limited to, receding or failed roof bolts, and missing mesh. The engineering company supported these findings with clear photographs of the dangerous, failing roof supports.

9.	For example, the "Superhighway," which was the main travel way through the underground portion, was found to have missing mesh support, roof failures around the roof bolts, and roof bolts that had pulled out of the roof:



Photo 1: Peeling and Crumbling of Rocks Around Bolts Along Superhighway

> installed. Since 2018 (Photo 1), the mesh on the east side of the Superhighway area is no longer present, and the rock around the rockbolts in this area appears to have fallen out around the rockbolts, exposing approximately 2 ft of the rockbolts, or, in some cases, has pulled out the rockbolts.

10. The engineering company warned of multiple "dome" formations in the travel ways that were exposing layers of the roof and would cause unstable conditions:

> **4.2.3   C-Road**
>
> C-Road primarily runs east/west and is located north of B-Road. C-Road crosses the Superhighway and part of the road would be needed to access the Potential Northern Expansion Area. The western part of the road, west of the Superhighway, has well developed dome and ledge features. The room has been previously scaled, and notations on the wall (Photo 3) indicate that the ceiling is sound and has been checked, however, the significant dome feature does indicate that rock in this area may be more unstable. Additionally, west of the berm on the west side, where C-Roads terminates is a dome feature that appears to expose the overlying unit.
>
> Just west of the Superhighway, before the large room with the prominent dome feature displayed in Photo 3, is an area on the southern rib that has several jointing features that are likely causing unstable conditions.
>
> **4.2.9   J-Road**
>
> In 2018, J-Road was not used for storage and berms were recommended in several places along J-Road. The J-Road designation was added in this evaluation because this area is now used for product storage. The 2018 evaluation recommended additional actions beyond light scaling in parts of this road; however, only scaling was completed. During the site visit, multiple small rockfall areas and large dome features were identified throughout J-Road (Photo 7). Additionally, in the room immediately east of the bermed area, the shale and dolomitic rocks above the sandstone are present in the roof, indicating that significant rockfalls have likely occurred in this area previously (Photo 8), with risk of propagation into occupied areas if not supported.

11. Shockingly, a roof fall occurred on the night shift before the engineering company began their evaluation, and Defendant failed to address this safety concern before the engineering company began its evaluation:

> A smaller rockfall occurred the day of Golders site visit (8/4/22) near the intersection with A-Road. The rockfall, which was reported by Mine personnel, occurred during the night shift prior to our arrival onsite. Once onsite, Golder personnel and Alyssa Veit of US Silica went to inspect the rockfall location (Photo 5 and Photo 6). Dome features were present at the rockfall area, and the area has since been barricaded and access has been restricted. In addition to the dome features located at the 8/4/2022 rockfall area, there are several other dome/brow features throughout F-Road, indicating that some areas on F-Road could be unstable.

12. The engineering report warned Defendant of the "dome" conditions and rock falls in almost all of the travel ways through the underground tunnels. In its prior reports, the

4

engineering firm had advised Defendant to place road berms to block off entry into the hazardous portions of the mine. This was never done.

13. The H-Road – where the injuries at the center of this case occurred – was especially hazardous, with a "dome" roof exposing thin underlayers, and "clear indications of previous rockfalls in this area."

### 4.2.8 H-Road

H-Road was not identified as a storage area in previous evaluations; however, no berms were previously noted blocking F-Road from H-Road. H-Road was not mapped in the 2015 laser mapping evaluation, and mapping provided in Figure 1 and Figure 2 is estimated from limited field measurements. Since the 2018 evaluation, lighting and asphalt have been installed in H-Road, and the area is primarily used for product storage on pallets.

The roof above most of H-Road has a predominant dome feature, making this area more susceptible to potential rockfalls. The pillar between F-Road to the south and H-Road thins out at the end of F-road, and a window is present between the two (Photo 7).

There are no berms preventing access to areas to the north, or east, from H-Road, which have not been inspected, scaled, or supported. Berms are highly recommended to restrict access to these potentially unsafe areas. Looking into the first room to the north of H-Road, there are clear indications of previous rockfalls in this area. Additionally, there is no berm at the end of the asphalt section of H-Road, and H-Road terminates in an area with a large dome feature that exposes the shale and dolomites in the upper units, making this area much less stable. A sharp pillar edge is also present in the first room to the west of H-Road, where installation of a through-rockbolt may be indicated. However, this would require inspection and scaling of the adjacent room to the north.

14. The report additionally found that Defendant had not inspected, not properly scaled, and not supported the dangerous rock and rib falls in the H-Road.

15. Defendant was aware of these hazardous conditions, and the warning that berms should be installed to block off entry into the H-Road, as early as October 19, 2022, the date the engineering report was issued.

16. Despite this knowledge, Defendant continued to ignore these recommendations and allowed workers in the H-Road with no warnings, exposing its own employees and contractors at the subject mine to unreasonable risks of roof falls.

5

17. At all times relevant hereto, Mr. Gilbert was employed by Fred Weber, Inc. as a laborer. Fred Weber, Inc. is a staffing agency that contracts with various mining companies, including the Defendant, to provide contract services for those companies.

18. At all times relevant hereto, Defendant had contracted with Fred Weber, Inc. to install new, additional roof bolts in certain portions of the Pacific Plant Mine. Mr. Gilber was assigned to one of the teams working on completing this.

19. Defendant maintained control over the workplace and determined where the new, additional roof supports were to be installed.

20. Defendant did not advise the Fred Weber employees that the previously installed roof supports were failing, only that Defendant wanted extra roof bolts and supports installed.

21. Despite knowing of the hazardous conditions in the subject mine, particularly the failing roof supports, Defendant never warned the Fred Weber employees of the hazards or the areas of extreme concern. Defendant recklessly exposed all individuals at the subject mine to these hazards without any concern for their safety.

22. On December 8, 2022, Mr. Gilbert and two of his co-workers were assigned to work on the roof bolting project at a section of the subject mine along the H-Road.

23. Defendant had not shared the engineering report with the Fred Weber employees, nor had it advised them of the hidden hazardous conditions on the H-Road due to the possibility of old roof supports failing.

24. Defendant allowed the Fred Weber employees to continue working in this area despite its knowledge that the old, previously installed roof supports were failing, which Defendant knew created a high risk of roof falls.

25. As Defendant failed to warn the Fred Weber employees of these risks, the Fred Weber employees did not know that other safety measures or temporary supports were needed, as they were lead to believe that the prior roof supports were still secure.

26. Defendant had not blocked off or posted any warnings of the unsafe portions of the H-Road or that old roof supports on the H-Road were failing.

27. Mr. Gilbert and another employee began using a basket lift to reach the high ceiling and install the new, additional roof supports.

28. As they were working in the basket, a massive portion of the domed roof, approximately 30 feet by 40 feet and 1 foot thick, suddenly collapsed, burying Mr. Gilbert and the other worker who was outside of the truck.

29. Mr. Gilbert was knocked unconscious by the falling rocks. After the workers were dug out, Mr. Gilbert was taken by EMS to the nearest hospital in St. Louis where he had to be intubated due to his inability to breath. He had severe leg and back pain, and an "obvious deformity" in his thoracic back area that was visible to emergency room providers.

30. Mr. Gilbert was diagnosed with multiple broken ribs, multiple fractured vertebrae, a fracture of the lumbar vertebrae and of the lumbar vertebra at L3, displaced sternal fracture, a public rami fracture, and multiple urological surgeries and treatments. He then began to develop fluid in his lungs and air between his lungs and chest wall.

31. Mr. Gilbert had to undergo extensive open reduction surgery to address these issues, with the placement of screws at his L2 and L4 positions. He spent over four weeks in the hospital. He was able to begin the lengthy rehabilitation process, during which he suffered multiple recovery setbacks, additional surgeries, and constant pain and suffering.

32. Despite the fact that the roof fall sent miners to the hospital and was federally required to be immediately reported to MSHA, Defendant intentionally did not contact MSHA to report the incident. It was not until 24 hours later that the incident was reported to MSHA.

33. MSHA issued a "High Negligence" citation to Defendant for failing to immediately report the incident in violation of 30 C.F.R. § 50.10(b).

| Mine Citation/Order | | | U.S. Department of Labor — Mine Safety and Health Administration | |
|---|---|---|---|---|
| **Section I -- Violation Data** | | | | |
| 1. Date Mo Da Yr 1/12/2023 | 2. Time (24 Hr. Clock) 1525 | | 3. Citation/Order Number 9577404 | |
| 4. Served To Scott Conroy - Plant Supervisor | | | 5. Operator U S SILICA COMPANY | (Contractor) |
| 6. Mine PACIFIC PLANT | | | 7. Mine ID 23-00544 | |
| 8. Condition or Practice | | | | 8a. Written Notice (103g) ☐ |
| The Mine Operator failed to immediately notify MSHA or within 15 minutes of an unplanned roof fall that occurred on 12/08/2022 @ approx. 13:00 that seriously injured two miners. An eyewitness stated the roof section was approx. 40 feet by approx. 30 feet and approx. 12 inches thick and had fell approx. 33 feet landing on top of 3 miners and injuring 2 of them. This type of accident has a reasonable potential to cause death. Immediate notification can assist MSHA in preventing future occurrences by determining the cause of the accident, to evaluate the possible safety hazards created by loose ground conditions, and to allow MSHA personnel to monitor the accident site until the area is determined to be safe. | | | | |
| | | | See Continuation Form (MSHA Form 7000-3a) ☐ | |
| 9. Violation | A. Health ☐ Safety ☐ Other ☐ | B. Section of Act | C. Part/Section of Title 30 CFR 50.10(b) | |

34. MSHA then began an investigation of the incident and found that there were multiple areas of loose ribs and roof conditions, and that these areas were not marked and there was no indication of inspections or warnings of these conditions.

**Findings:**
**#1 Positive**
An area of roof had fallen on top of 3 miners, injuring 2. Multiple areas of of loose ground conditions were discovered upon examination on both ribs and areas of the roof. Areas were not marked, no indication of being checked with a scaling bar or warn of conditions.

**#2 - Positive**
An accident occurred on 12/8/2022 at approx. 1300 whereas a section of roof approx. 30 feet by 40 feet approx. 12 inches thick fell from a height of approx. 31 feet on top of 3 miners, 2 of which were transported to the hospital with injuries, one severe.
The accident was not reported on the MSHA 1-800 Line until 12/9/2022 at 12:56.


35. MSHA was initially unable to reach the incident site due to the presence of "obvious loose" ground conditions it found in multiple roadways. Before the investigation could be performed, MSHA inspectors had to leave the area due to the hazardous conditions.

36. John Conroy, Plant Supervisor for the Defendant, demonstrating Defendant's complete lack of concern for workers and sole concern was for production, shockingly asked the MSHA investigators if the stored "product" in the mine could still be removed. The MSHA inspector had to remind Plant Supervisor Conroy that the entire underground portion of the mine was off limits and not to be disturbed.

37. MSHA issued a citation to the Defendant for failing to properly support the roof conditions in the H-Road in violation of 30 C.F.R. § 57.3360.

**Mine Citation/Order** — U.S. Department of Labor, Mine Safety and Health Administration

Section I–Violation Data

1. Date: 1/12/2023
2. Time (24 Hr. Clock): 1545
3. Citation/Order Number: 9577405
4. Served To: Scott Conroy - Plant Supervisor
5. Operator: U S SILICA COMPANY
6. Mine: PACIFIC PLANT
7. Mine ID: 23-00544
8. Condition or Practice: The Mine Operator failed to ensure an area of roof was supported above the H Road that had been previously determined by an engineering report dated Oct. 19, 2022 to be more susceptible to potential rock falls. The Operator allowed the Contractor to drill approx. 70 holes in the roof area without installing proper roof bolts or ground support and work under the area without support. These conditions expose miners to serious crushing injuries from working under unsupported ground conditions.

9. Violation: (Health ☐ / Safety ☐ / Other ☐); C. Part/Section of Title 30 CFR: 57.3360

Section II–Inspector's Evaluation

10. Gravity:
   A. Injury or Illness (has) (is): Reasonably Likely ✓
   B. Injury or illness could reasonably be expected to be: Fatal ✓
   C. Significant and Substantial: Yes ✓
   D. Number of Persons Affected: 003
11. Negligence (check one): C. Moderate ✓
12. Type of Action: 104(a)
13. Type of Issuance (check one): Citation ✓
14. Initial Action: 
15. Area or Equipment:

38. In the citation, MSHA specifically stated that Defendant had been aware of the dangerous conditions for months based upon the engineering report from October.

39. MSHA found that Defendant had allowed contractors to be exposed to "serious crushing" risks and to work under unsupported ground conditions despite Defendant's prior knowledge of these hazardous conditions.

40. As a direct and proximate result of Defendant's reckless actions, Plaintiff Todd Gilbert was buried by the collapsed roof and horribly injured.

41. Plaintiff suffered serious, permanent, and disabling physical and psychological injuries in the incident. As a direct and proximate result of Defendant's acts and/or omissions which caused the serious, permanent, and disabling injuries and damages to Plaintiff Todd Gilbert, on or about December 8, 2022, Defendant is liable to the Plaintiffs for all past and future damages, including but not limited to:

    a.) Physical pain and suffering;

    b.) Mental anguish and suffering;

    c.) Permanent physical impairment;

    d.) Permanent psychological impairment;

    e.) Physical scarring and disfigurement;

    f.) Loss of earning capacity;

    g.) Lost earnings;

    h.) Past and future medical expenses;

    i.) Loss of capacity to enjoy life and usual pursuits;

    j.) Embarrassment and humiliation; and

    k.) Annoyance and inconvenience.

## COUNT I – Negligence

42. The Plaintiffs repeat and incorporate by reference the allegations contained in paragraphs 1 through 41 of this Complaint as if set forth herein verbatim.

43. Defendant was the mine operator at the subject mine and owed a duty of care to individuals, including Plaintiff Todd Gilbert, it invited into its mine to provide them an area that was safe, free from hazards, and/or warn them of known potential hazards.

44. Defendant had prior knowledge of the hazardous roof conditions and failing roof supports at its mine before the incident giving rise to this cause of action.

45. Defendant failed to correct or warn Fred Weber employees, including Plaintiff Todd Gilbert, of these known hazardous conditions in violation of both state and federal law.

46. Defendant negligently, recklessly, willfully, and with wanton disregard for the safety of individuals it invited into its mine breached its duties owed to Mr. Gilbert and others by ignoring prior actual knowledge of unsafe roof conditions in its mine and failing to protect against roof falls, correct unsafe conditions, and/or warn of known hazardous conditions and areas.

47. As a direct and proximate result of Defendant's acts, omission and other conduct referenced herein above, on or about December 8, 2022, Plaintiff Todd Gilbert sustained the severe and permanent injuries and damages described herein.

## COUNT II - LOSS OF CONSORTIUM

48. The Plaintiffs repeat and incorporate here by reference, the allegations contained in paragraphs 1 through 47 of this Complaint as if set forth herein verbatim.

49. As a further direct and proximate result of the conduct and actions of the Defendant as described herein, Plaintiff Bambi Gilbert has been deprived of the loss of society, companionship, and consortium of her husband, Plaintiff Todd Gilbert.

**WHEREFORE**, Plaintiffs demand judgment against the Defendant for:

      a.    an amount of compensatory damages determined by a jury according to the laws of the State of Missouri;

      b.    an amount of punitive damages determined by a jury according to the laws of the State of Missouri;

      c.    costs and attorney fees expended in prosecution of this matter;

      d.    pre-judgment and post-judgment interest as provided under the law; and,

      e.    any and all other relief to which the Court deems Plaintiffs are entitled.

**PLAINTIFFS DEMAND A JURY TRIAL ON ALL ISSUES.**

                                          **Todd Gilbert and Bambi Gilbert,**
                                          **By Counsel,**

*/s/ Sally I. Heller*
Sally I. Heller (#33506 MO)
THE HELLER LAW FIRM, LLC
13205 Manchester Road, Suite 210
St. Louis, MO 63131
Phone: (314) 219-5959
Fax: (314) 219-5964
siheller@sallyhellerlaw.com
*Counsel for Plaintiffs*